# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                          1:20-cr-708-KWR

ANTHONY BUNTYN,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY

THIS MATTER comes before the Court upon Defendant's Motion to Exclude Expert Testimony of Mark Tolleson and Request for a *Daubert* Hearing, filed on February 23, 2021 **(Doc. 42)**. On April 23, 2021, the Court held a *Daubert* hearing on the matter.

After consideration of the arguments made by the parties during the hearing, and the comprehensive briefing on the issue, the Court finds that Tolleson's testimony is admissible under *Daubert*. Accordingly, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED.**

### BACKGROUND

This matter arises from Defendant's alleged abuse of detainees in his care while working as a private prison transport officer for Prisoner Transportation Services of America (PTS), in violation of 18 U.S.C. § 242 and 18 § U.S.C. 1512(b)(3).

The counts of the indictment provide the following:

**Count 1**
On or about March 26, 2017, in Socorro County, in the District of New Mexico, the defendant, ANTHONY BUNTYN, while acting under color of law, willfully

deprived detainee W.Y. of the right, secured and protected by the Constitution and laws of the United States, to be free from deprivation of liberty without due process of law, which includes the right to be free from unreasonable force from a prisoner transport officer. Specifically, Defendant ANTHONY BUNTYN repeatedly tased detainee W.Y., without legal justification, while W.Y. was handcuffed. This offense involved the use of a dangerous weapon and resulted in bodily injury to W.Y.
In violation of 18 U.S.C. § 242.

**Count 2**
On or about March 26, 2017, in Socorro County, in the District of New Mexico, and elsewhere, the defendant, ANTHONY BUNTYN, while acting under color of law, willfully deprived detainees, including detainees A.S., W.Y., S.K., and J.P., and other detainees being transported in the PTS van, of the right, secured and protected by the Constitution and laws of the United States, to be free from deprivation of liberty without due process of law, which includes the right to be free from a prison transport officer's deliberate indifference to conditions of confinement that pose a substantial risk of serious harm to detainee health or safety. This offense resulted in bodily injury to detainees A.S., W.Y., S.K., and J.P.
In violation of 18 U.S.C. § 242.

*Id.*

**Count 3**
Between on or about March 26,2017, and March 29, 2017, in the District of New Mexico and elsewhere, the defendant, ANTHONY BUNTYN, did knowingly use intimidation against and threaten another person, and attempted to use intimidation against and threaten another person, with the intent to hinder, delay, and prevent the communication to a federal law enforcement officer of truthful information relating to the commission and possible commission of a federal offense. Specifically, ANTHONY BUNTYN knowingly used intimidation against and threatened, and attempted to use intimidation against and threaten, detainees being transported in the PTS van with retaliation if they reported the conduct described in Counts One and Two, which occurred in the District of New Mexico.
In violation of 18 U.S.C. § 1512(b)(3).

*Id.*

Defendant contests Mr. Tolleson's qualifications as an expert witness.

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire*. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–

94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

Rule 702 further requires that expert testimony is relevant. One aspect of relevance is that the opinions have a sufficient factual basis and a reliable application of the methodology to the facts. *Daubert*, 509 U.S. at 591.

Expert witnesses may testify about ultimate issues of fact, but an expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). Although an expert may not give an impermissible legal conclusion, an expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *Id.* (quoting *United States v. Dazey*, 403 F.3d 1147, 1171-72 (10th Cir. 2005)); *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (stating that Rule 704(a) allows expert opinion on an ultimate issue so long as he explains basis for any summary opinion and does not simply tell the jury what result to reach). "Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Richter*, 796 F.3d at 1195.

Where an expert witness's testimony is based on his experience, the expert witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *See United States v.*

*Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R. Evid. 702 advisory committee's note (2000)).

## DISCUSSION

The government provided notice on September 8, 2020, that it intends to present at trial the testimony of Mark Tolleson, the former Director of Training and Investigations for PTS. **Doc. 31.** The government stated that, among other things, Tolleson personally trained Defendant on the relevant policies and procedures for conducting prisoner transports. *Id.* **at 2.** The government provided that, additional to fact testimony, Tolleson "may be called upon to offer expert opinions based on his specialized knowledge and expertise. The government anticipates that such testimony may include Mr. Tolleson's assessment that various actions taken by the defendant, including his uses of force and treatment of the detainees in his custody, were inconsistent with the defendant's training and with PTS policies." *Id.* **at 2-3.** The government also stated that it had "provided defense counsel with a transcript of Mr. Tolleson's grand jury testimony and with Mr. Tolleson's current resume" as well as "any records or communications in the government's possession that were created by this witness in connection with this matter." *Id.* **at 3.**

The thrust of Defendant's arguments to exclude Tolleson's testimony in its briefs and during the hearing are that (1) Tolleson is unqualified as an expert in this case because "the government has provided no information on why Tolleson is qualified to offer an expert opinion on this topic. His resume does not indicate that he has ever been proffered or qualified as an expert witness in court. He does not hold any advanced degrees, nor has he written any peer-reviewed articles on the proposed topic of his testimony," (2) both PTS training policies and Tolleson's opinions are unreliable, and, (3) and "a hybrid fact/expert witness should be viewed with caution, and is inappropriate in this case." **Doc. 42 at 4-7.**

### A. Tolleson's Qualifications as an Expert

Defendant attacks Tolleson's qualification as an expert on the basis that the government has not sufficiently demonstrated how he is qualified to testify as an expert on PTS policies and training and to opine whether Defendant's use of force was in accordance with those policies and training. **Doc. 42 at 4.** Defendant emphasizes that Tolleson has no advanced degrees has not written any peer-reviewed papers on the subject, and concludes that, absent a *Daubert* hearing, the government has failed to meet its burden to show that Tolleson is qualified to testify as an expert. *Id.* Having held the requested hearing, the Court disagrees.

### I. Tolleson's Experience

Rule 702 allows expert testimony where the "witness [is] qualified as an expert by knowledge, skill, experience, training, or education" to offer such opinions. *LifeWise Master Funding,* 374 F.3d at 928. At the *Daubert* hearing on this matter, Tolleson testified to significant experience in the military, law enforcement, security contracting, and in the training of others, both in the field and in the classroom. **Doc. 61.** Tolleson's relevant experience also includes participating in hundreds of hours of training courses designed to prepare him to instruct others, "numerous" certifications in areas such as high-risk inmate transport and movement and use of electronic control devices, and working as a PTS transport officer for approximately nine-months prior to taking on the role of training director for PTS. *Id.* His time as director of PTS Training and Investigations encompassed the time Defendant received training. *Id.*

The Court considers Tolleson's extensive practical experience and education to be sufficient to qualify him to testify as an expert in PTS policies and training relevant to this action and to opine whether Defendant's conduct adhered to those policies and training with respect to his use of force against the inmates he was transporting.

## II. Reliability

Defendant challenges the reliability of Tolleson's testimony by arguing that PTS policy is unreliable and that Tolleson himself is unreliable because he initially reviewed Defendant's actions and found them appropriate, but later, "[a]t some point during the course of the FBI investigation, Tolleson apparently, and rather coincidentally, changed his opinion." **Doc. 42 at 5-7.** Defendant urges the Court "to conduct a heightened analysis of the proposed expert testimony, to determine whether PTS is sufficiently training its prisoner transport officers in the first instance." **Doc. 42 at 7.**

In the briefs and at the *Daubert* hearing, Defendant advanced largely misplaced arguments to a determination of Tolleson's qualification as an expert witness, appearing to claim that the fact that PTS has been subject to frequent lawsuits relating to purported violations of its policies, or that those policies themselves are poorly crafted, renders Tolleson unable to testify as an expert. **Doc. 42 at 5-7.** The Court finds this argument irrelevant to its determination. PTS' standards are not on trial, nor is the reputation of PTS relevant in this case. Additionally, use of force is a general area to law enforcement and not specific to prisoner transport. Defendant's training and experience factor into determination of the state of mind. As Tolleson wrote and trained on the program, Tolleson should be able to give his opinion.

Defendant's second argument, that, following discussion with the FBI, Tolleson changed his opinion as to whether Defendant acted appropriately in his use of force and is therefore unreliable himself, is equally without merit. *Id.* **at 7.** At the *Daubert* hearing,[1] Tolleson testified that the reason his opinion changed was due to previously unseen video footage he was provided, which he did not have at the time of forming his initial opinion. **Doc. 61 at 83** ("The video

---

[1] The United States also asserts that Tolleson's change in opinion and the reasoning for it were explained in the transcript of his grand jury testimony and provided to the defense "in September 2020." **Doc. 46 at 9.**

7

obviously showed that [Defendant] had omitted certain elements of his testimony to me or his statements to me in his written reports. His written reports and verbal statements indicated to me that he knew very well what policies and training required, because everything that was written or stated to me was well within policies and training, but what I saw on the video was not. I was disappointed, honestly."). Nevertheless, inasmuch as Tolleson's opinion changed, the Court concludes that to be the subject of cross examination and not relevant to whether his testimony should be excluded.

Moreover, "[o]nce the trial court has determined that expert testimony would be helpful to the trier of fact, a witness 'may qualify as an expert by knowledge, skill, experience, training, or education and ... the expert ... should not be required to satisfy an overly narrow test of his own qualifications.'" *United States v. Begay*, 2020 WL 2514661, at *17 (D.N.M. May 15, 2020) (quoting *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) (internal quotation marks omitted). After considering the *Daubert* factors, the Court finds that Tolleson's proposed expert testimony is sufficiently reliable to form the foundation for admissible expert testimony.

### III. Relevance

Defendant takes issue with the government's intent to have Tolleson testify as both an expert and a "fact witness," arguing that this will confuse the jury and is unfairly prejudicial to Defendant. **Doc. 50 at 5.** ("The government asks the Court to disregard the real danger that having Mr. Tolleson testify as a "fact" witness will confuse the jury in deciding the ultimate issues in this case. Such fact testimony will necessarily include discussing the development of PTS training and policy, describing that training, and then detailing Tolleson's internal inquiry into [Defendant's] actions."). Citing Fed. R. Evid. 403, Defendant contends that Tolleson's testimony will be "extremely prejudicial." *Id.* ("Rather than decide for itself the legal question of whether

[Defendant's] actions were reasonable, Tolleson's expert testimony will distract the jury with the question of whether [Defendant's] actions complied with PTS policy.).

Any "proffered expert testimony must also pass muster under Federal Rule of Evidence 403." *Schinagel et al. v. City of Albuquerque, et al.*, No. Civ. 07-481 LH/RLP, at *4 (D.N.M. Mar. 25, 2009) (unpublished), *quoted in Martinez v. Salazar*, No. CV 14-534 KG/WPL, 2016 WL 9488862, at *2 (D.N.M. Dec. 14, 2016). Fed. R. Evid. 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.." Fed. R. Evid. 403.

The Court rejects Defendant's largely conclusory arguments. The Court finds Tolleson's testimony highly relevant. For instance: (1) As the director of PTS training, Tolleson developed and taught the relevant training material at the time Defendant worked for PTS, including on use of force and handling of "intermediate weapons" such as that allegedly unreasonably used by Defendant in this instance; (2) Tolleson testified that he was directly involved in Defendant's actual training; and, (3) Tolleson received the initial complaints about Defendant's misconduct and headed the ensuing internal investigation.

The Court concludes that the United States laid a sufficient record in both their written response and oral arguments to overcome Defendant's position. The Court finds that Tolleson's testimony would assist the jury in determining the facts at issue. Moreover, as discussed by both parties at the *Daubert* hearing, limiting instructions could be provided at trial to avoid any potential confusion. Accordingly, the Court holds that Tolleson's opinions and testimony are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice or confusion.

## CONCLUSION

Therefore, the Court DENIES Defendant's motion to the exclude the expert testimony of Mark Tolleson, finding the proposed testimony admissible under *Daubert*.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Exclude Expert Testimony of Mark Tolleson **(Doc. 42)** is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE