**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.                                    1:20-cr-708-KWR

ANTHONY BUNTYN,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion for Dismissal for Spoliation of Evidence, filed August 12, 2021 **(Doc. 150)**, and Defendant's Motion for Order to Show Cause for Noncompliance with Multiple Grand Jury Subpoenas Duces Tecum and Rule 17(c) Subpoena Duces Tecum **(Doc. 144)**.  The Court issued an order to show cause to Prisoner Transport Services and set a show cause hearing for August 17, 2021 **(Doc. 149)**.  That hearing was continued to September 28, 2021 to give Prisoner Transport Services time to find responsive documents.  Having reviewed the parties' briefs and applicable law, and considering the arguments presented at hearings on the matter, the Court finds that Defendant's motion to dismiss is not well-taken and is **DENIED**. The Court further finds that PTS has complied with the subpoenas and the Court therefore **QUASHES** the order to show cause.

## BACKGROUND

A grand jury charged Defendant Anthony Buntyn in a three-count indictment for allegedly abusing detainees in his care while working as a private prison transport officer for Prisoner Transportation Services of America (PTS), in violation of 18 U.S.C. § 242 and 18 § U.S.C. 1512(b)(3). Count One alleges that Defendant's use of a taser StrikeLight on a handcuffed detainee

amounts to an unconstitutional use of unreasonable force. Count Two alleges that Defendant was deliberately indifferent to inhumane conditions of confinement. Finally, Count Three, alleges that Defendant attempted to obstruct justice, in violation of 18 U.S.C. § 1512. In this motion, Defendant moves to dismiss on the basis of spoliation of evidence in which he alleges that the government's conduct prevented him from obtaining: "(1) Big Road GPS Data of the transport route, (2) Phone call records between PTS Employees and [Defendant], and, (3) Emails to/from or concerning [Defendant]." **Doc. 150 at 1.** Alternatively, Defendant requests the Court permit the admission of testimony and evidence that PTS hid legally sought evidence. *Id*.

## DISCUSSION

### I.   Relevant Law

 "The Due Process Clause imposes duties on the government not to deprive a defendant of exculpatory evidence." *United States v. Harry*, 816 F.3d 1268, 1276 (10th Cir. 2016). In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

In *California v. Trombetta* and *Arizona v. Youngblood,* 488 U.S. 51 (1988), the Supreme Court set out a two-part test regarding the Due Process Clause and the government's destruction or loss of evidence.  The Government violates a defendant's right to due process when: (1) it destroys evidence whose exculpatory significance is "apparent before" destruction; and (2) the defendant remains unable to "obtain comparable evidence by other reasonably available means." *See United States v. Bohl*, 25 F.3d 904, 909 (10th Cir. 1994) (citing *Trombetta* at 489).  If, however, the exculpatory evidence was not apparently exculpatory but merely "potentially useful," the

2

failure to preserve the evidence does not violate due process unless the defendant can show bad faith on the part of the police. *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). In other words, the United States' duty to preserve extends only to evidence that "might be expected to play a significant role in the suspect's defense." *Id.* Defendant bears the burden of showing that the missing evidence met that standard when it was lost. *See United States v. Gomez*, 191 F.3d 1214, 1218 (10th Cir.1999).

The government contends that it has complied with the requirements of the Due Process Protection Act, its duty to investigate and that Defendant has not demonstrated a violation under *Trombetta* and *Youngblood*. **Doc. 153 at 2.**

## II.     Analysis

Defendant alleges that the government failed to investigate PTS' noncompliance with a series of grand jury subpoenas in purportedly withholding portions of relevant evidence and faults the government for the scope of its follow-up search requests from PTS. **Doc. 150 at 4.** The Court finds there is no merit to Defendant's arguments.

<u>The Government has complied with requirements of the Due Process Protection Act</u>

Defendant asserts that the government violated his due process rights in that the allegedly lost or deleted PTS evidentiary material possesses exculpatory value, thereby hobbling his defense. **Doc. 150 at 9-10.**

The Due Process Protections Act, Pub L. No. 116-182, 134 Stat. 89 (2020), reaffirmed, but did not expand, preexisting prosecutorial obligations in discovery, pursuant to *Brady v. Maryland* (373 U.S.83 (1963)). In *United States v. Badonie* (2005 WL 2312480, at *2 (D.N.M. Aug. 29, 2005)), a court in this district explained a prosecutor's obligations under *Brady*:

> [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution. *Id.* at 1196–97. Thus, prosecutors have a duty to disclose evidence that is favorable to a defendant, which is either exculpatory or impeaching and is material to either guilt or punishment, regardless whether the defendant requests the information. *See United States v. Agurs,* 427 U.S. 97, 106 (1976). In *Giglio v. United States,* 405 U.S. 150, 153 (1972), the Supreme Court extended the prosecution's obligation to disclosure evidence to include evidence that is useful to the defense in impeaching government witnesses even if the evidence is not inherently exculpatory.

*Brady v. Maryland,* however, *only requires the government to disclose material exculpatory evidence in its possession. See United States v. Johnson,* No. 96–40082–02–SAC, 1997 U.S. Dist. LEXIS 11586, *7 (D. Kan. June 9, 1997) (unpublished). "*It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess*." ' *United States v. Tierney,* 947 F.2d 854, 864 (8th Cir.1991)(quoting *United States v. Beaver,* 524 F.2d 963, 966 (5th Cir.1975), *cert. denied,* 425 U.S. 905 (1976)). *See United States v. Kraemer,* 810 F.2d 173, 178 (8th Cir.1987)(explaining that the prosecution is not required "to search out exculpatory evidence for the defendant"). On the other hand, "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." *Carey v. Duckworth,* 738 F.2d 875, 878 (7th Cir.1984). A prosecutor must disclose information of which it has knowledge and access. *United States v. Bryan,* 868 F.2d 1032, 1037 (9th Cir.1989). A prosecutor may have a duty to search files maintained by other "governmental agencies closely aligned with the prosecution" when there is a "some reasonable prospect or notice of finding exculpatory evidence." *United States v. Johnson,* 1997 U.S. Dist. LEXIS 11586 at *8 (quoting *United States v. Brooks,* 966 F.2d 1500, 1503 (D.C.Cir.1992)). *A prosecutor does not have a duty, however, to obtain evidence from third parties. See United States v. Combs,* 267 F.3d 1167, 1173 (10th Cir.2001)(observing that *Brady v. Maryland* does not oblige the government to obtain evidence from third parties)

*United States v. Badonie*, 2005 WL 2312480, at *2 (D.N.M. Aug. 29, 2005) (emphasis added).

Here, it is undisputed that the government has never had in its possession the allegedly missing information from PTS, which is a third party. Nor has Defendant established a link between the government and any destruction of evidence by PTS. Accordingly, the Court finds no due process violation.

Defendant asserts that the government did not properly investigate instances of noncompliance by PTS and suggests that the government's failure "…is particularly troubling in light of the intermingling between PTS and the prosecution…" **Doc. 150 at 4.** The government

contends that it has fulfilled, and even gone above and beyond, its duty to investigate. The government highlights its efforts to seek from PTS, at Defendant's request, additional records such as prisoner transport reports for the detainees on the March 2017 PTS transport. **Doc. 153 at 3.** The government also notes instances where it acted promptly to notify Defendant when it discovered a missing page from evidence provided by PTS. *Id*. Defendant has pointed to no law that holds the government must go above and beyond to seek documents from a third party on behalf of Defendant. *See United States v. Combs,* 267 F.3d 1167, 1173 (10th Cir.2001) (observing that *Brady v. Maryland* does not oblige the government to obtain evidence from third parties) *See United States v. Harry*, 927 F. Supp. 2d 1185, 1210 (D.N.M. 2013), *as amended* (May 13, 2013), *on reconsideration in part, United States v. Harry*, 2014 WL 6065672 (D.N.M. Oct. 10, 2014), and *aff'd, United States v. Harry*, 816 F.3d 1268 (10th Cir. 2016) ("A prosecutor does not have a duty to obtain evidence from third parties."). Moreover, the Court notes, and the record reflects, that to the extent that the government and Defendant have sought additional information from PTS, PTS has voluntarily cooperated with those requests. Having reviewed the briefs and considered the argument advanced during the pretrial conference, the Court finds that the Government has fulfilled its duty to investigate.

Next, Defendant argues that the government failed to preserve potentially exculpatory evidence on behalf of Defendant. **Doc. 150 at 7** ("It appears that exculpatory, material evidence was destroyed by PTS in the time between the March 2017 trip and now PTS claims to be checking for Big Roads data, but cannot even confirm whether it exists. No cell phone or email records have been provided. The due process clause requires the government to preserve potentially exculpatory evidence on behalf of defendants."). Defendant suggests that should the Court deem the missing evidence "potentially exculpatory" *Trombetta* applies. **Doc. 150 at 7** ("The due process clause

requires the government to preserve potentially exculpatory evidence on behalf of defendants."). Defendant posits that if the exculpatory value of the "missing" evidence is indeterminate and the evidence was only "potentially useful" then he must show the government demonstrated bad faith. **Doc. 150 at 8** (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

It is undisputed that the evidence which Defendant alleges exists and has been deleted or withheld by PTS was never in the possession or control of the United States. Defendant has not shown why the government would be responsible for a third party's alleged destruction of evidence which the government never possessed. *United States v. Hartman*, 194 Fed. Appx. 537, 542 (10th Cir. 2006) ("Even had the [evidence] had exculpatory value, it is not clear under the precedents cited that the government has any duty to preserve evidence not in its control."); *United States v. Thomas*, 61 F. Supp. 3d 1221, 1225 (D.N.M. 2014), *aff'd in part, United States v. Thomas*, 849 F.3d 906 (10th Cir. 2017) ("…*Trombetta* and *Youngblood* are best read as regulating government conduct *only with respect to the evidence it possesses*; precedent does not require that the government serve as investigator for the defendant.") (emphasis added). The government correctly notes that Defendant has not concretely explained, beyond supposition, how these allegedly lost materials represent exculpatory material. *United States v. Parker*, 72 F.3d 1444, 1451 (10th Cir. 1995) (citing *Arizona v. Youngblood,* 488 U.S. 51, 56 n. *, 109 S.Ct. 333, 336 n. *, 102 L.Ed.2d 281 (1988) ("The mere possibility that lost or destroyed evidence could have exculpated a defendant is not sufficient to satisfy *Trombetta* 's requirement that the exculpatory value be "apparent" to the police before destruction."). It is not clear whether such recordings exist in the first place and even assuming that they do exist and were later deleted, Defendant has not met his burden to show the recordings contained exculpatory evidence.  Therefore, the Court agrees with the government that both *Trombetta* and *Youngblood* are inapplicable to the instant matter.

Finally, Defendant's suggestion that "agents were or should have been aware that the PTS has had numerous lawsuit filed against them for civil rights abuses and violations, and therefore may have a motive to control the narrative and/or withhold evidence" has no basis in law or fact. Defendant's conclusory argument that "The government's careless handling of this critical evidence supports an inference of bad faith" is patently insufficient to establish the requisite bad faith by the government. *United States v. Parker*, 72 F.3d 1444, 1451 (10th Cir. 1995) ("[I]f the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence. [M]ere negligence on the government's part in failing to preserve such evidence is inadequate for a showing of bad faith.") (internal citation and quotation omitted). The Court has not discerned any such conduct by the government. On the contrary, the government appears to have done its utmost to aid Defendant in securing evidence from PTS.

**III.   Record does not reflect that any material or evidence was destroyed by PTS.**

Alternatively, even if Prison Transport Services' actions could be attributed to the Government, the Court finds that the record does not reflect that any material or evidence was destroyed or not produced by PTS.

"A [Fifth Amendment] due process violation occurs when the government fails to preserve constitutionally material evidence." *United States v. McIntosh*, 573 F. App'x 760, 762 (10th Cir. 2014); *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). To establish such a violation, the defendant must show the government: "(1) destroy[ed] evidence whose exculpatory significance [wa]s apparent before destruction; and (2) the defendant … [is] unable to obtain comparable evidence by other reasonably available means." *Trombetta,* 467 U.S. at 489, 104 S.Ct.

at 2534 (internal quotation marks omitted). "If the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence." *United States v. Bohl*, 25 F.3d 904, 909–10 (10th Cir. 1994) (citing *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333).  Even assuming PTS's actions can be attributed to the Government, the Court concludes that Defendant did not establish these elements.

The Court held a hearing on the order to show cause and motion to dismiss on August 17, 2021. The hearing was continued to allow time for PTS to find and produce evidence responsive to the subpoenas.  On September 28, 2021, the Court held a final hearing on the motions.  PTS represented that it had searched and produced 15 emails responsive to the Defendant's Rule 17 subpoena, and 22 emails responsive to the grand jury subpoenas.  At the hearing, Defendant conceded that PTS represented that all material relevant to the subpoenas had been produced, and he had no basis to say that was inaccurate.  Defendant acknowledged that he has responsive materials now, and he did not think he can take the position that PTS continues to fail to comply with the subpoena.  At the hearing, Defendant did not assert what, if any evidence or discovery remained unproduced or destroyed.  Therefore, the Court finds that Defendant has not made a showing that evidence was destroyed, and there is nothing in the record to suggest that any evidence in PTS' control is outstanding or was destroyed.

At the September 28, 2021 hearing, PTS represented that it contacted Big Sky and requested certain data or documents.  Big Sky stated that there is a backlog in process requests for data.  PTS represented that Big Sky is a vendor and its documents or data are not in PTS's control.  Defendant did not dispute these representations.  The record does not reflect that any subpoena

was issued to Big Sky.  Therefore, the Court finds that any alleged failure to produce documents by Big Sky is not attributable to PTS or the Government.

At the hearing, the Court noted that PTS's counsel went above and beyond in finding the evidence and requesting evidence from third parties not under PTS's control.  The Court finds that PTS acted in good faith.   Therefore, the Court does not believe that Defendant's requested jury instruction is appropriate at this time.

The Court additionally finds that Defendant has not shown that any allegedly destroyed evidence was exculpatory under *Trombetta* and has not shown that PTS has acted in bad faith under *Youngblood*.

**IV.    Order to Show Cause quashed.**

As noted above, the record reflects that PTS complied with subpoenas, and Defendant does not argue what other evidence remains outstanding.  The Court finds that PTS has complied with the subpoenas and order to show cause, and the Court finds that PTS produced material in good faith.  Therefore, the order to show cause is quashed.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Dismissal for Spoliation of Evidence **(Doc. 150)** is hereby **DENIED** for reasons described in this Memorandum Opinion and Order; and

**IT IS FURTHER ORDERED** that the Order to Show Cause **(Doc. 149)** is **QUASHED.**



KEA W. RIGGS
UNITED STATES DISTRICT JUDGE